LUVERNE STATE BANK, a Corporation, Appellant, v. E. H.
DAILEY and James McQueen, Respondents.

(200 N. W. 793.)

**Appeal and error — bills and notes — instructions to find for defendant
maker if notes were given for accommodation of plaintiff payee, held
prejudicially erroneous, in view of pleading and proof that he signed
the notes for accommodation of co-maker.**

In an action upon promissory notes where it appeared that the appealing
defendant had signed the notes as an accommodation maker for the cashier
of the plaintiff or for his co-maker, an instruction directing the jury to find
for the defendant, if they should find the note was given for the purpose of
accommodation of the payee bank, is held to be prejudicially erroneous.

Opinion filed November 5, 1924.

Appeal and Error, 4 C. J. § 3013 p. 1031 n. 31.  Bills and Notes, 8 C. J. § 409
p. 259 n. 43; § 412 p. 263 n. 69; § 1394 p. 1072 n. 85; § 1397 p. 1077 n. 43.

Appeal from the District Court of Barnes County, *Englert,* J.
Reversed and new trial granted.

*Divet, Holt, Frame & Thorp,* and *D. R. Divet,* for appellant.

When an agent has knowledge of facts in relation to the matter in
which he is acting, when his interests or the interests of another for
whom he is acting are adverse to the principal, the knowledge of the
agent will not be imputable to his principal. In such cases the law
will not presume that the agent communicated the facts within his
knowledge to his principal, and the principal does not become charge-
able with such knowledge. Ætna Indemnity Co. v. Schroeder, 12 N.
D. 110; First Nat. Bank v. Tompkins, 6 C. C. A. 237, 57 Fed. 20;
Terrell v. Branch Bank, 12 Ala. 502; First Nat. Bank v. Bevin, 72
Conn. 666, 45 Atl. 954; Merchants Nat. Bank v. Demers, 92 Ga. 735,
19 S. E. 38; Higgins v. Lansingh, 154 Ill. 387, 40 N. E. 362; Barnes
v. Trenton Gaslight Co. 27 N. J. Eq. 33; Nat. Bank of Commerce v.
Feney, 9 S. D. 550, 70 N. W. 874; Re Plankinton Bank, 87 Wis. 378,
58 N. W. 784.

Where an officer is acting partly for himself and partly for the cor-
poration, notice to him does not affect the corporation. Victor Gold
Min. Co. v. Natl. Bank of Republic (Utah) 49 Pac. 826.

It has been held that where the cashier of a bank sold cattle in which he and another person were jointly interested, and deposited the proceeds of the sale in the bank to his own credit, and later checked it out and converted it to his own use, the bank was not chargeable with notice that the other person had any interest in the fund deposited, it appearing that no one except the cashier connected with the bank had any knowledge of such other person's interest in the cattle or the proceeds. Overton Bank v. Thompson, 56 C. C. A. 554, 118 Fed. 798.

It has also been held that where the partner of a firm, who is also cashier of a bank, sells to the bank, acting through its Discount Committee, a note owned by the partnership, the bank is not chargeable with any knowledge possessed by its cashier of facts constituting a defense to the note. National Bank v. Feney, 9 S. D. 550, 70 N. W. 874.

If there is any defense, it involves the practicing of a fraud upon the bank by himself and Cheshire, and as said by our Supreme Court, in such a case the wrongdoer cannot be allowed to take advantage of his own wrong. Engen v. Matthys (N. D.) 196 N. W. 550.

It has been repeatedly held by the highest judicial tribunals that officers of banks have not the power to excuse or limit the legal obligations of persons to the banks they represent by agreeing with them that they shall not be held liable or called upon to pay the obligations which they make, either as principal debtors or accommodation makers or endorsers, and on the credit of which the bank has parted with funds. Thompson v. McKee, 5 Dak. 172.

*A. P. Paulson,* for respondent.

It is permissive, in an action between the immediate parties or subsequent holders with notice, to establish the real consideration by parol; and such evidence is also admissible, in such action, to rebut the presumption of a consideration, and to impeach a mere recital of consideration. First State Bank of Eckman v. Kelly (N. D.) 152 N. W. 127. See also 8 Cyc. 252; 2 Enc. Ev. 491, and authorities cited.

Under this rule it is true that in an action by the payee, the maker of a note may show by parol that he executed the note for the accommodation of the payee, and received no consideration therefor. National Citizens Bank v. Bowen, 109 Minn. 473, 124 N. W. 241; Conrad v. Clark, 106 Minn. 430, 119 N. W. 214, 482; Shalleck v. Munzer, 121 Minn. 65, 140 N. W. 111; Preas v. Vollintine, 53 Wash. 137, 101

51 N. D.—44.

Pac. 706; Nesson v. Millen, 205 Mass. 515, 91 N. E. 995; Dan. Neg. Inst. 6th ed. 81a; 8 Cyc. 252, note 39.

In the proper case, it may be shown by parol that the note never was delivered; that the maker received no consideration therefor, or that the contract was vitiated by fraud or mistake. First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 128.

It is doubtless true, as a general rule, that the party for whose accommodation a note is executed is not entitled to recover from the accommodation maker thereon. Dan. Neg. Inst. 5th ed. 175; 7 Cyc. 725; 3 R. C. L. § 336.

The party for whose benefit accommodation paper has been made acquires no rights against the accommodation party, who may set up the want of consideration as a defense to an action by the accommodated party, since as between them there is no consideration, a fact which is always a defense to a suit on negotiable paper between the immediate parties. 8 C. J. p. 259, and cases cited.

Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, for accommodation of the payee, he is liable to all parties subsequent to the payee but not to the payee. 8 C. J. 260, § 409; First Nat. Bank v. Strauss (N. D.) 194 N. W. 900; Stubbins Hotel Co. v. Beissbarth (N. D.) 174 N. W. 217; First Nat. Bank v. Davidson (N. D.) 188 N. W. 194; Security State Bank v. Peterson (N. D.) 192 N. W. 491.

BIRDZELL, J. This is an appeal from a judgment and from an order denying the plaintiff's motion for a new trial. The action is upon two promissory notes, one for $2,000 and the other for $1,500; the plaintiff bank is payee and the defendants are the makers. The notes were given as renewals of notes that had been previously given in the following circumstances: The defendant E. H. Dailey had been negotiating for or had purchased a store at Glenfield. He did not have the amount of money necessary to finance the purchase and steps were taken to obtain assistance from the defendant McQueen, a farmer living in the vicinity of Luverne with whom there had been some previous talk relating to financial assistance to Dailey. Dailey's brother-in-law, one Cheshire, was cashier of the plaintiff bank where the defendant McQueen transacted considerable business. Dailey signed two notes, one

for $2,000 and one for $1,500 covering the purchase price of the store and a partial payment on a dwelling house at Glenfield. He left these notes at the bank and Cheshire took them out to McQueen's place, where, after a conference lasting about an hour, McQueen signed them. Later, when the notes matured Dailey signed the renewal notes and left them at the bank and McQueen came there and signed them. Subsequently, Dailey was discharged in bankruptcy and McQueen defends the suit brought on the notes by setting up the accommodation char-acter of the instruments. The trial resulted in a verdict and judgment for the defendant. The trial court later overruled the plaintiff's mo-tion for a new trial. On appeal the appellant challenges the sufficiency of the evidence to justify the verdict and also assigns error in the giv-ing of the following instruction:

"The burden is on the defendant in this case to satisfy you by fair preponderance of the evidence that such an agreement was made and had between the defendant and Mr. Cheshire, the cashier of the bank, to the effect that Mr. Cheshire represented to the defendant that, if he would sign the note, he, Mr. Cheshire, would see to it that the defend-ant would never have to pay the same, and that the defendant would in no way be liable thereon, and that the note was signed by Mr. McQueen for the purpose of accommodation of the bank and without any con-sideration therefor. Now, should you find, from the evidence in this case, that the defendant has satisfied you by fair preponderance of the evidence that such representations were made, and that the note was signed on such conditions and upon those promises, then the defendant would not be liable."

The defendant's evidence with reference to the character of the trans-action went in substantially without objection. He says that Cheshire stated in substance:

"If you will sign those notes, I will guarantee you will not have any-thing to pay. I will not run, let him run any debt to the wholesale house, nor let him run any debt to the bank of Glenfield, and this man he is buying the business of, in the fall, if he has any accounts that is good, he will pay the cash for them."

He further testified as follows:

Q. Did he (Cheshire) say anything to you about Mr. Dailey's hav-ing you sign the note? A. No, sir, he didn't.

Q. Did you make any agreement with Dailey to sign the notes at all? A. Never made any deal with Dailey to sign the notes at all.

Q. But you didn't understand you were to be held on those notes? A. No, sir.

Q. What did you suppose you signed them for? A. For accommodation to Mr. Cheshire, to make it look good for the bank.

Q. Did he state that to you? A. Yes.

Q. You knew that Mr. Dailey was going to get the money out of the bank on these notes, didn't you? A. Well, I suppose he did, yes.

.    .    .    .    .    .    .    .    .    .    .    .    .

Q. What did you understand by making it look good for the bank? A. Mr. Cheshire wanted to make it, because they were brother-in-laws—when the directors come to him, so it would look O. K. to the directors.

Q. So it would look O. K. to the directors? A. Yes.

Q. Say anything about the Examiner? A. Didn't say anything about the Examiner. The idea was that these notes would look better with the additional name.

Q. In other words, he was deceiving the directors with this note? A. I don't know about that.

Q. What did you intend? A. I didn't go into that deal with him.

Q. What did you intend by signing this note? A. I signed it for Mr. Cheshire's accommodation, nobody else.

Q. On his statement it was to make it look good to the directors? A. Yes, sir, for the bank.

Q. You were willing, if this note with your name on it, would make it look to the directors? A. I was willing if he thought so.

Q. You thought if he could deceive the directors with this note, you were willing? A. Well, it was up to him.

.    .    .    .    .    .    .    .    .    .    .    .

Q. What do you mean, it was up to Cheshire? A. Well, he asked me to sign those notes.

Q. Answer the question. What do you mean when you say it was up to him? A. I could not answer—that is a question I could not answer.

Q. What did you mean when you said it? A. It was a question I

could not answer. It was up to him if he thought it would look good for the bank. That is the way I meant it.

Q. If he thought it would look good for the bank to show your name on it, you were willing he should do it? A. I done it for the accommodation of Mr. Cheshire. That is what I done it, signed it for.

Q. How was it to accommodate Mr. Cheshire? A. Well accommodate him with my name on there.

The appellant contends that this evidence is not sufficient to make out a defense in that the plaintiff bank is not bound by the promise of its cashier. In the view we take of the case, it will be unnecessary to discuss the sufficiency of the evidence to justify the verdict. As previously noted, the foregoing evidence, and other evidence of the same general character, went in substantially without objection, and it appears to us that whether or not the understanding disclosed by this evidence, if it existed, amounts to a defense might depend upon other facts not disclosed in the record, and that, consequently, the question as to the sufficiency of this evidence, as affecting the outcome of a new trial, is largely hypothetical.

. We are clearly of the opinion that the instruction complained of is erroneous and that the judgment must be reversed on this account. In the answer the defendant did not plead as a defense that the notes were given for the accommodation of the bank but only that they were given as an accommodation, and it will be noted that in the testimony of the defendant himself it is not stated that he gave them for the accommodation of the bank but that he gave them to accommodate Cheshire and to enable him to avoid criticism by the board of directors of the bank. The idea that the bank was to be accommodated is necessarily inconsistent with the testimony of the defendant, for, according to his testimony, it was assumed by Cheshire and him that the board of directors would have occasion to pass upon the notes in question, acting for the bank, and that the name of Dailey alone would not be satisfactory to them. McQueen's name was to serve no purpose of the bank, nor was it to be used to secure any advantage for the bank. On the contrary, it was to subserve some interest of either Dailey or Cheshire.

In this view of the evidence, and it seems to us that no other can reasonably be taken, the instruction complained of is erroneous in that

it treats the bank, on the testimony of the defendant, as the accommodated party. It tells the jury, in substance, that the defendant would not be liable if the notes were given with the understanding stated in the defendant's testimony and "for the purpose of accommodation of the bank." We can not construe McQueen's evidence as defining a transaction whereby notes were given by him as an accommodation to the bank. If McQueen became an accommodation party, the party accommodated was somebody other than the bank. The bank, however, was payee of the note, and under § 29 of the Negotiable Instruments Law (§ 6914 of the Compiled Laws of 1913), an accommodation party, while not liable to the party accommodated, is liable to a holder for value notwithstanding knowledge on the part of the latter of the accommodation character of the instrument. If the bank advanced money on the notes it would be a holder for value within this section (see § 6910, Comp. Laws 1913, § 25, Uniform Neg. Inst. Law) though it might not be a holder in due course. The instruction, as we view it, is misleading in that it advises the jury that they should find for the defendant if satisfied from the evidence that the notes were given for the accommodation of the bank when there is no evidence that they were so given, and, further, in assuming or stating that the bank could not recover in any event if the transaction were as described by McQueen.

It is suggested in the memorandum opinion of the trial court, and in the respondent's brief, that the evidence shows that the bank had already advanced the money to Dailey before McQueen became a party to the notes and that, consequently, there was no consideration for McQueen's signature. A careful reading of the testimony leaves us with the impression that the statement is an inference from certain other facts that are not definitely fixed in the record in point of time and that the probable reason why the occurrences were not better fixed in the matter of time is that the parties were not attempting to fix the time when the money was advanced. Inasmuch as a new trial must be had in any event, an opportunity will be afforded for direct evidence on this question if within the issues.

Judgment reversed and new trial granted.

BRONSON, Ch. J., and CHRISTIANSON, JOHNSON, and NUESSLE, JJ., concur.